Vincent W. Davis. Esq. (SBN 125399)
Edna V. Wenning, Esq. (SBN 130377)
Law Offices of Vincent W. Davis and Associates
440 E. Huntington Drive, Suite 100
Arcadia, California 91006
Telephone: 626-446-6442
Fax: 626-446-6454
Email:  edna@vincentwdavis.com

Attorneys for Plaintiffs AV. P., a minor, by and through her Guardian ad Litem, ANNASTACIA PRICE, AR. P. a minor, by and through her Guardian ad Litem ANNASTACIA PRICE, AN. P. a minor, by and through his Guardian ad Litem ANNASTACIA PRICE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AV. P., a minor, by and through her Guardian ad Litem, ANNASTACIA PRICE, AR. P. a minor, by and through her Guardian ad Litem ANNASTACIA PRICE, AN. P. a minor, by and through his Guardian ad Litem ANNASTACIA PRICE,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, by and through COUNTY OF LOS ANGELES DEPARTMENT OF CHILDREN AND FAMILY SERVICES; a public entity; DEBRA PARKER, in both her official capacity and individually; SOCIAL WORKER 2, in both her official capacity and individually, and DOES 1 through 20, inclusive,<br><br>Defendants, | CASE NO:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**FIRST CAUSE OF ACTION**<br>**(Violation of Civil Rights (42 U.S.C. § 1983)**<br><br>**SECOND CAUSE OF ACTION**<br>**(Monell-related Claims)**<br><br><br><br>**DEMAND FOR A JURY TRIAL** |

-1-

**COMPLAINT FOR DAMAGES**

COME NOW, plaintiffs AV.P., a minor; AR.P., a minor, AN.P. a minor, by and through their Guardian ad Litem, ANNASTACIA PRICE, and for causes of action against defendants, and each of them, complain and allege as follows:

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction pursuant to 42 U.S.C. Section 1983, plaintiffs' claims for violation of civil rights.

2. The acts and omissions complained of herein occurred in the County of Los Angeles, and the public entity parties and defendants reside in or are situated in the County of Los Angeles. Venue is therefore proper in the Central District of California.

## PARTIES

3. Minor plaintiff AV.P. is and was at all times relevant the biological daughter of ANNASTACIA PRICE, who, during all times relevant as described in more detail below, engaged with the Los Angeles County Department of Children and Family Services, by and through numerous employees, representatives, or agents of the same, in and around Los Angeles County, as described in more detail below. Plaintiff AV.P.'s claims are brought by and through her Guardian ad Litem, ANNASTACIA PRICE.

4. Minor plaintiff AR.P. is and was at all times relevant the biological son of ANNASTACIA PRICE, who, during all times relevant as described in more detail below, engaged with the Los Angeles County Department of Children and Family Services, by and through numerous employees, representatives, or agents of the same, in and around Los Angeles County, as described in more detail below. Plaintiff AR.P.'s claims are brought by and through her Guardian ad Litem, ANNASTACIA PRICE.

5. Minor plaintiff AN.P. is and was at all times relevant the biological son of ANNASTACIA PRICE, who, during all times relevant as described in more detail below, engaged with the Los Angeles County Department of Children and Family Services, by and through numerous employees, representatives, or agents of the same, in and around Los Angeles County, as described in more detail below. Plaintiff AN.P.'s claims are brought by and through his Guardian ad Litem, ANNASTACIA PRICE

6.      Defendant COUNTY OF LOS ANGELES is a local public entity organized under the laws of the State of California (hereinafter referred to as "COUNTY OF LOS ANGELES" or "COLA"). Defendant Los Angeles County Department of Children and Family Services (hereinafter referred to as "DCFS" or "the Department") is an agency of Defendant COLA designated to administer laws and programs relating to protective services for children, foster care, and adoptions. DCFS operates under the policy direction of the Los Angeles County Board of Supervisors and the California Department of Social Services and Health Services.

7.      As the employer of social workers, investigators and their supervisors, COLA/DCFS has primary responsibility for the training, discipline and supervision of such employees, including supervisors of such employees and Plaintiffs are informed and believe and thereon allege that it was COLA/DCFS which promulgated, encouraged, administered and/or permitted, the policies, practices, customs and procedures under which the individual Defendant employees of COLA/DCFS committed the acts or omissions complained of herein.

8.      Plaintiffs are informed and believe and allege thereon that except as otherwise alleged herein, each of the Defendants employed by COLA/DCFS are and, at all relevant times, were the agents, employers, alter egos and/or co-conspirators of each of the other COLA/DCFS employee Defendants named herein and, in doing the things alleged herein, were acting within the course and scope of such positions at the direction of and/or with the permission, knowledge, consent and/or ratification of each of the other Defendants.  Among other things, Plaintiff is informed and believes and alleges thereon that Defendants conspired with and aided and abetted each other in the events herein described.

9.      Defendants individually and collectively did knowingly and willingly, conspire with each other to deprive Plaintiff of his State and Federal rights, liberties and interests.

10.     Plaintiffs are informed and believe and allege thereon that except as otherwise alleged herein, COLA/DCFS Defendants are and, at all relevant times, were the co-conspirators of each of the other Defendants and, in doing the things alleged herein, was acting within the course and scope of such positions at the direction of and/or with the permission, knowledge, consent and/or ratification of each of the other Defendants.

11. At all times relevant herein, Defendant COLA/DCFS employed Defendant DEBRA PARKER (hereinafter referred to as "Defendant" or "PARKER"), as a social worker.

12. At all times relevant herein, Defendant COLA/DCFS employed Defendant SOCIAL WORKER 2 (hereinafter referred to as "Defendant" or "SOCIAL WORKER 2"), as a social worker.

13. At all times relevant herein, Defendant COLA/DCFS had the power, right, and duty to control the manner in which the individual Defendants carried out the objectives of their employment to assure that all order, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the local municipalities.

14. The unknown named defendants – identified herein as "DOE DEFENDANTS" 1 through 50 include, but are not limited to, unknown social workers, supervisors, managers, investigators, deputy, directors, who participated in, approved of, or otherwise acquiesced in the action and misconduct of the other named defendants as herein, resulting in the deprivation of Plaintiff's civil rights and injuries to her person, as is described below. These unknown defendants include policy makers that created, fostered, acquiesced in, ratified, or maintained the policies, customs, or practices that cause the deprivation of Plaintiff's constitutional rights and resulting injuries.

15. Plaintiff is ignorant of the true names and capacities of these DOE DEFENDANTS, though all are believed to have been employed by COLA or acting in concert with other named DEFENDANTS and in their capacity were acting as state actors and was in some intentional or negligent manner responsible for the injuries suffered by Plaintiff.

16. Defendants, and each of them, performed the wrongful acts and omission alleged herein in bad faith and with knowledge that their conduct violated the well and clearly established and settled law.

17. At all times material herein, Defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other Defendant herein and within the course and scope of such employment and agency.

18. Defendants COLA/DCFS, PARKER, SOCIAL WORKER 2, , and DOES 3-10 are individuals who were acting under color of law in conducting an investigation pursuant to California law, including as to proceedings described in Government Code § 820.21(a) and mandatory duties under the California Welfare and Institutions Code, including: § 290.1; § 300; § 305; § 306; § 307 ; §307.4; § 308; § 309; § 311; § 319; § 332 and § 827.

19. These statutes embody state and federal due process including requirements for dependency cases and federal constitutional rights under the 14th Amendment.

## INCIDENTS AT ISSUE

20. On or around January 2010, the Juvenile Court authorized the removal of Plaintiffs AV.P.; AR.P.; and AN.P. from their parents. The children's mother ANNASTACIA was the victim of domestic abuse perpetrated by the father ANTWOINE PATTERSON.

21. On or around 2010, Defendant COLA/DCFS removed Plaintiffs AV. P.; AR.P.; and AN.P. from the care of their parents and placed them at a confidential address pursuant to section 308(a) of the California Welfare and Institutions Code.

22. On or around 2011, the Court appointed paternal grandmother Karen Brooks as legal guardian of the minor plaintiffs herein. Plaintiffs lived with legal guardian Brooks at 4643 Pimenta Avenue, Lakewood, CA 90712. ANNASTACIA and ANTWOINE had visitation rights over the children. ANTWOINE was not allowed to live with his mother Karen Brooks, ANTWOINE being convicted of domestic violence, pursuant to court order.

23. Due to the biological relationship between Karen Brooks (mother) and ANTWOINE (son), ANTWOINE was allowed to spend the night at Brooks' house. ANTWOINE was using drugs and was observed rolling up a joint in Brooks' house in the presence of the children.

24. Based on information and belief, ANTWOINE and his girlfriend RAVEN were allowed by Brooks to live in the Lakewood house with them, in direct contravention of the court order barring ANTWOINE from living with the children at Brooks' home. Brooks also coached the children to lie about their father living in the house with them and his girlfriend. Defendant social workers PARKER, GRAY, and LASONTEZ were notified that ANTWOINE was living in Brooks' home with the children.

**COMPLAINT FOR DAMAGES**

25. ANNASTACIA started calling the social workers reporting that ANTWOINE was living in the BROOKS home with her children. ANNASTACIA voiced her concern about safety of the children since ANTWOINE was convicted of domestic battery, a drug addict and an alcoholic who habitually consume weed in the presence of the children. ANNASTACIA placed more than ten calls to defendants PARKER, GRAY and LANSONTEZ and other social workers about the dangerous living arrangements with the children in the presence of their father who was a drug user and an alcoholic.

26. ANNASTACIA called social worker DEBRA PARKER several times to warn her about the precarious living arrangements at the BROOKS' residence, but her warnings were ignored. ANNASTACIA's warnings and calls were dismissed as the social workers concluded that she was just unhappy about the living arrangements and about having not granted custody of the children. PARKER, GRAY, LASONTEZ and others were deliberately indifferent to the repeated warnings given to them by ANNASTACIA about the children's safety in the presence of ANTWOINE. This anomalous living condition at the BROOKS home was allowed to prevail by defendants and all of them to the detriment of the children. Defendants DCFS/COLA and PARKER, GRAY and LASONTEZ, should have known that BROOKS condoned her son's blatant use of drugs in front of the children, his habitual drinking, and allowed ANTWOINE and his girlfriend RAVEN to live under the same roof with the children at her home.

27. The anomalous living arrangement was allowed to continue by defendant social workers and each of them until June 2019 when the minor plaintiff AV.P. disclosed to social workers (when she was 10 years old) that since age seven her father ANTWOINE and his girlfriend RAVEN had been living with them at the Brooks' home and that her father would wait until everyone else was asleep and would sexually abuse her nightly seven days a week for the past three years. The sexual abuse consisted of oral copulation and some form of penetration.

28. When she told her grandmother BROOKS about the incest in April 2019, BROOKS simply suggested that she change her sleeping arrangement by sleeping in BROOKS' room instead. Brooks also warned AV. P. that she should never tell anyone about her father's sexual molestation because they would be placed in foster homes.

29. AV.P. also disclosed that ANTWOINE was also sexually abusing her sister AR. P. who consistently denied that she was being sexually molested as well by her father because BROOKS coached her to lie.

30. Defendants PARKER, SOCIAL WORKER 2, DOES 3-10 disregarded ANNASTACIA's notices to Defendants and each of them that ANTWOINE was living with the children at BROOKS' home and that ANTWOINE was doing drugs and consuming alcohol in the presence of the children, in contravention of the court order preventing ANTWOINE from spending the night and/or living with the children in the guardian's home. Had defendants PARKER, GRAY, LANSONTEZ and others conducted their due diligence and lend credence to ANNASTACIA's repeated warnings that ANTWOINE was living with the children in Brooks' home, contrary to court order, plaintiffs AV.P. and AR.P. would have been spared from being repeatedly sexually abused by their own father.

31. Plaintiff AN.P. was also subjected to domestic violence while in BROOKS' home when BROOKS who believed in corporal punishment hit him with flip flops and slammed him against the wall when he misbehaved. ANTWOINE also hit AN. P.'s breast when he is displeased with his behavior.

32. The failure to protect Plaintiffs AN.P. AR.P. and AN.P. resulted from implementation of policies and practices of Defendant COLA/DCFS and its agents.

**FIRST CAUSE OF ACTION**

**(Violation of Civil Rights (42 U.S.C. § 1983)**

**Eighth and Fourteenth Amendments – Failure to Supervise and Protect))**

**Against All Defendants and DOES 1 through 50, inclusive**

33. Plaintiffs re-allege paragraphs 1-32 and incorporates them herein as though fully set forth.

34. Plaintiffs are informed and believe, and thereon allege that the right to supervision and protection from harm by a foster parent/legal guardian guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution is "clearly established," see *Tamas v. Dep't of Soc. Health Servs.* (2010) 630 F. 3d 833, 842-843, such that a reasonable social worker in Defendants' situation would know it is unlawful to intentionally fail to supervise and protect Plaintiffs AV.P.; AR.P.; and AN.P. from sexual and physical abuse while in care of Defendants.

35. Commencing from approximately 2010, and continuing until 2019, Defendants, and each of them, were acting under color of state law when they acted, agreed and/or conspired to unlawfully and intentionally fail to supervise and protect Plaintiffs AV.P.; AR.P. and AN.P. from sexual and physical abuse while in the care of Defendants PARKER, GRAY, LANSONTEZ and DOES 3-10

36. Commencing from approximately 2010, and continuing until 2019, Defendants, and each of them, were acting under color of state law when they acted, agreed and/or conspired to unlawfully and intentionally fail to supervise and protect all Plaintiffs from physical and sexual abuse while in the care of Defendant COLA/DCFS.

37. Defendants, and each of them, maliciously conspired to violate the civil rights of Plaintiffs, including violation of Plaintiffs' rights found in the Eighth and Fourteenth Amendments of the United States Constitution, by, but not limited to, unlawful and intentional failure to supervise and protect Plaintiffs AV.P.; ARP. and AN. P., from sexual and physical abuse while in the care of Defendants.

38. By these actions, Defendants, and each of them, interfered and/or attempted to interfere with Plaintiff's constitutional rights to supervision and protection from harm while in foster care guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution.

39. As the direct and proximate result of the Defendants' actions, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.  Defendants and their respective entities, are vicariously responsible for the conduct of the all Defendants and DOES 1 through 50, under Government Code section 815.2 and applicable other statutory and case law.

40. On information and belief, Defendants, and each of them, acted with malice and with the intent to cause injury to Plaintiffs; or acted with a willful and conscious disregard to the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing said Defendants, and to deter them and others in the future.

## SECOND CAUSE OF ACTION

### (Monell-related Claims)

### Against Defendant COLA/DCFS and DOES 1 through 50, inclusive

41. Plaintiffs re-allege paragraphs 1-40 and incorporate them herein as though fully set forth.

42. Defendants COLA/DCFS, including through their respective entities, established and/or followed policies, procedures, customs, and/or practices (hereinafter referred to collectively as "policy" or "policies") which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including those under the Eighth Fourteenth Amendments, by, but not limited to:

 a. The policy of failing to and intentionally disregarding claims of sexual and physical abuse of foster children while in the care of foster parents; and

 b. The practice of minimizing any and all reports of unlawful conduct being perpetrated against children in care of foster parents and/or legal guardians; and

c. By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees, and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Eighth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings. (This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiff reserves the right to amend this pleading as more information becomes available.)

43.     Defendants COLA/DCFS, including through their respective entities, breached their duties and obligations to Plaintiffs including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by permitting the Defendants and DOES 1 through 50, to engage in the unlawful and unconstitutional conduct as herein alleged.

44.     Defendants COLA/DCFS knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiffs; and that such policies would subject them to injunctive relief which Plaintiff asserts herein.

45.     These actions, and/or inactions, of Defendants COLA/DCFS are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred, and will continued to incur, attorneys' fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

**WHEREFORE**, Plaintiffs pray for judgment against all Defendants, as to all causes of action, as follows:

1. Plaintiffs demand a jury trial as to the issues so triable;

2. General damages and special damages according to proof;

3. As against only the individual defendants and not any municipality, punitive damages as allowed by law;

4. Attorneys' fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

5. Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

6. Costs of suit incurred herein; and

7. Such other and further relief as the Court deems proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs respectfully demand a jury trial for all claims asserted here.

RESPECTFULLY SUBMITTED,

Date: March 23, 2022        LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY:   */s/ Edna V. Wenning, Esq.*
Edna V. Wenning, Esq.
Attorney for Plaintiffs
AR.P.; AV.P. and AN.P. by and through their Guardian ad Litem
ANNASTACIA PRICE

-11-
**COMPLAINT FOR DAMAGES**